Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: 14-15195-ABL |
| Diagnostics Research Corporation, | Chapter 11 |
| Debtor. | Hearing Date: September 24, 2014 |
| | Hearing Time: 1:30 p.m. |

**OMNIBUS REPLY TO THE OBJECTIONS OF THE UNITED STATES TRUSTEE AND RBC DISTRIBUTION, LLC TO THE DEBTOR'S DISCLOSURE STATEMENT**

Diagnostics Research Corporation, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby files its omnibus reply (the "**Reply**") to the objections (the "**Objections**") of the United States Trustee (the "**UST**") and RBC Distribution, LLC ("**RBC**") to the Debtor's disclosure statement (the "**Disclosure Statement**")[1] in support of its Chapter 11 plan of reorganization (the "**Plan**"). In support of this Reply, the Debtor respectfully states as follows:

**Preliminary Statement**

1. The UST's Objection essential boils down to one issue: concerns with the adequacy of information in the Disclosure Statement. RBC's Objection boils down to two

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Disclosure Statement.

1

issues: (i) concerns with the adequacy of information in the Disclosure Statement; and (ii) allegations that the Debtor's Plan is fundamentally flawed and cannot be confirmed.

2.      As set forth herein, RBC's concerns involving the Debtor's Plan, not the Disclosure Statement, should be disregarded at this time.  The UST and RBC's other concerns will be addressed herein and to the extent necessary, the Debtor will amend its Disclosure Statement.

3.      Accordingly, the Disclosure Statement, as amended, should be approved and the Debtors should be allowed to proceed with the solicitation and confirmation of their plan.

**Reply**

4.      As discussed fully herein, the Disclosure Statement (as it will be amended to address any of the substantive objections) fully satisfies the requirements of section 1125 of the Bankruptcy Code and contains adequate information of a kind that would enable a hypothetical reasonable investor to make an informed judgment about the Debtors' Plan.  11 U.S.C. § 1125. The Debtor files this Reply to specifically address the assertions set forth in the Objections that the Disclosure Statement contains inadequate information pursuant to 11 U.S.C. § 1125(d). For the reasons set forth herein, the Objections should be denied.

A.      **UST's Objection**

5.      The UST's Objection urges this Court to deny approval of the Disclosure Statement because it does not provide adequate information that a hypothetical creditor would need in order to make an informed decision about the Debtors' Plan.  As set forth below, each of the UST's concerns will be addressed and to the extent necessary, the Debtors will amend the Disclosure Statement to ensure compliance with 11 U.S.C. § 1125(d).

6.      First, the UST objects to the general information about the Debtor including the income it generates, its previous failed sales approach, its new sales approach, and a description of the Debtor's assets, including its intellectual property. Prior to the hearing on the Disclosure Statement, the Debtor will amend its Disclosure Statement to provide additional information. Moreover, on September 17, 2014, the Debtor amended its schedules to include additional details regarding its intellectual property and secured claims. See Docket No. 52.

7.      Second, the UST indicates that the Disclosure Statement does not account for a cash collateral stipulation. Simply put, the Debtor has the consent of its two secured creditors to use cash collateral, and will file a stipulation, including its proposed 12-month budget, in the near term.

8.      Third, the UST raises concerns over the information provided regarding the extent and nature of the Debtor's two secured loans. The Debtor will amend its Disclosure Statement to describe the nature of the loans, the date the loans were made, and a description of the underlying security agreements. Separately, on September 17, 2014, the Debtor amended its schedules to include additional details regarding the secured claims on Schedule D. See Docket No. 52.

9.      Next, the UST also raises issues regarding the connection between the Debtor, the Debtor's principal, and secured creditor Joe Harris. The Debtor will amend its Disclosure Statement to provide additional disclosures regarding the relationship between the Debtor and Joe Harris.

10.     The UST also raises issues regarding: (i) the Plan and the fact that equity interests will be eliminated; and (ii) Mr. Sutton's status as a statutory insider. Simply put, equity interest holders are deemed to reject the Plan. Moreover, Mr. Sutton's affirmative vote

3

in support of the Plan cannot be used to satisfy Section 1129(a)(10) of the Bankruptcy Code. The Debtor will amend its Disclosure Statement and Plan accordingly.

11. Finally, the UST objects to the methodology being used to value the Debtor and the amount of money Mr. Sutton will contribute as new value to the Plan. First, the methodology being used to value the Debtor will be the open market. Specifically, the Plan proposes to distribute the new equity interests to Mr. Sutton in exchange for his equity contribution to the Plan, such is subject to higher and better offers. In addition, the amount of cash being offered is listed in the Disclosure Statement as the payment of Class 1 claims ($75,000), unsecured priority claims ($19,000) and allowed administrative claims. To the extent these amounts are not clear, the Debtor will amend its Disclosure Statement accordingly.

12. Based on the Debtor's proposed amendments, the Debtor submits that the Disclosure Statement meets the requirements of 11 U.S.C. § 1125 and should be approved.

**B.** **RBC Objection**

13. RBC's Objection opposes the Debtor's Disclosure Statement on two grounds: (i) adequacy of information contained in the Disclosure Statement; and (ii) allegations that the Debtor's Plan is fundamentally flawed. Each will be addressed herein.

a. Adequacy of Information Contained in the Disclosure Statement

14. Regarding the adequacy of information contained in the Disclosure Statement, RBC first objects to the adequacy of information regarding the feasibility of the Debtor's Plan. As accurately pointed out by RBC, the Debtor's Plan will be funded by the Equity Contribution to be made by the Debtor's President, Stan Sutton, subject to higher and better offers. The ability of Sutton or any other bidder for the Debtor's New Equity Interests to

4

purchase the New Equity Interests (i.e. feasibility of plan) is a confirmation issue and will be addressed at confirmation.

15. Next, RBC raises an issue with respect to the identity and/or amounts of claims in Classes 3 and 4 of the Plan. As set forth in the Disclosure Statement, Class 3 consists of the Debtor's general unsecured creditors, while Class 4 consists of the Debtor's equity security holders. The Debtor is willing to amend its Disclosure Statement to provide more disclosures regarding the claims in Classes 3 and 4.

16. RBC also raises a concern over the Debtor's liquidation analysis, which is attached to the Disclosure Statement as <u>Exhibit B</u>. Specifically, RBC argues that the liquidation analysis does not contain a value for the Debtor's intellectual property (the "**IP**") and/or the revenue stream to be generated by the IP over the past five years. While it is true that the Debtor has not conducted a formal evaluation or appraisal of its IP, the true value of the IP will come from the opportunity for creditors or other interested parties to purchase the Debtor's equity through its Plan. Simply put, the value of the Debtor's IP will be realized through the Plan confirmation process.

17. Finally, RBC raises an issue concerning the description of the proposed management of the Debtor post-confirmation. The reorganized debtor will be managed by its current President, Mr. Stan Sutton, who has managed the Debtor since its inception. If another party is successful in bidding for the reorganized Debtor's equity, however, such successful bidder will likely manage the reorganized Debtor. The Debtor is willing to amend its Disclosure Statement accordingly.

        b.      The Debtor's Plan is Confirmable

18. Last, RBC objects to this Court's approval of the Disclosure Statement because it supports a plan that is patently unconfirmable. To support its allegations, RBC points to issues regarding good faith, best interests of creditors, lack of an impaired accepting class, and lack of the Plan being fair and equitable. While the Debtor submits that each of these issues are more appropriately addressed at confirmation, the Debtor will address them here as the Plan is confirmable.

The Plan is Proposed in Good Faith.

19. As a general rule, a Chapter 11 plan is proposed in good faith if it achieves "a result consistent with the objectives and purposes" of the Bankruptcy Code and exhibits "fundamental fairness" in dealing with creditors. In re Marshall, 721 F.3d 1032, 1046 (9th Cir. 2013); In re Jorgensen, 66 B.R. 104, 108-08 (9th Cir. B.A.P. 1986). The totality of the circumstances should be considered in determining good faith.

20. Indeed, several other courts hold selling assets/equity through an auction process and/or subject to overbids is evidence of good faith. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986) (generally an auction may be sufficient to establish good faith and value for assets); In re Ewell, 958 F.2d 276 (9th Cir. 1992) (courts generally follow traditional equitable principles in finding good faith absent showing of fraud, collusion or attempt to take grossly unfair advantage of other bidders); In re King-Wilson, 1998 WL 737997 (N.D. Cal. 1998) (finding a sale of three parcels of real property subject to overbids was for fair and adequate consideration and in the best interests of the bankruptcy estate).

21. Here, the Debtor's proposed Plan is a new value Plan, subject to overbids. Indeed, pursuant to the case law cited above, the Debtor's Plan and the allowance for overbidding is consistent with the objectives and purposes of the Bankruptcy Code in maximizing the value of the Debtor's assets/equity for the benefit of its creditors. Accordingly, the Plan is proposed in good faith and not patently unconfirmable.

The Plan Satisfies the Best Interests Test

22. Next, RBC argues that the Plan fails the best interest test because it fails to show that each holder of a claim or an equity interest in such class either: (i) has accepted the plan; or (ii) will receive or retain under the plan property of value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor is liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7). While this argument is more appropriately reserved for confirmation, the Debtor's Plan satisfies the best interests test.

23. Specifically, as set forth above, the Debtor's new value plan is subject to overbids. Accordingly, the Debtor is maximizing the value of its assets and/or equity interests to ensure that creditors receive at least what they would receive under a Chapter 7 liquidation. Moreover, the Debtor's President, Mr. Stan Sutton, in addition to the new value contribution, is converting his secured debt to equity in the reorganized debtor, which will allow for the Equity Contribution to pay administrative claims and priority unsecured claims, none of which would be paid under Chapter 7 over Mr. Sutton's secured claim. Accordingly, the Plan satisfies the best interests test.

The Debtor's Plan Can Satisfy Section 1129(a)(10)

24.     Section 1129(a)(10) provides that to the extent there is an impaired class of claims, at least one impaired class of claims must accept the Plan, excluding acceptance by any insider.  11 U.S.C. § 1129(a)(10).  Here, RBC argues that Mr. Harris' secured claim in Class 1 of the Plan is not impaired because it will be paid, in full, on the 30th day following the effective date of the Plan.  Simply put, RBC's argument misses the mark.

25.     In the Ninth Circuit, any alteration of the claimant's rights, including an enhancement of those rights, constitutes impairment under Section 1124(1).  In re L&J Anaheim Assocs., 995 F.2d 940, 942 (9th Cir. 1993).  Indeed, the "Ninth Circuit standard for the designation of impaired classes in relatively liberal."  In re Orchards Village Investments, 2010 WL 143706, *14 (Bankr. D. Or. 2010), citing In re L&J, 940 F.2d at 942-43. Simply put, a creditor's claim is "impaired" under the Bankruptcy Code unless its rights are left unaltered by a plan of reorganization, and Section 1124 of the Bankruptcy Code defines "impairment" in the broadest possible terms.  In re Hotel Associates of Tucson, 165 B.R. 470, 474 (9th Cir. BAP 1994, citing In re L&J, 940 F.2d at 942.  Therefore, if a creditor's legal, equitable or contractual rights are altered by a plan of reorganization, its claim is to be considered impaired. Id.

26.     Indeed, the Honorable Judge Nakagawa of this Court recently confirmed a Debtor's Chapter 11 plan where the only accepting impaired class was the Clark County Taxing Authority, which would be paid in full on the 90th day following the effective date of the Debtor's plan, which treatment was better than the minimal treatment for secured tax claims under 11 U.S.C. 1129(a)(9)(D), that is, payment in full over 5 years.  See In re R&S St. Rose, LLC, Case No. 11-14974-MKN, Memorandum Decision, Docket No. 290.  Judge

8

Nakagawa's confirmation order was recently upheld on appeal.  <u>See</u> District Court Case No. 2:13-cv-02165-JCM, Docket No. 17.

27.  Simply put, the Ninth Circuit standard for impairment is relatively liberal, and unless a creditor's rights are left unaltered by a plan, a creditor's claim is impaired. Accordingly, the Debtor's Plan can satisfy Section 1129(a)(10).

<u>The Plan is Fair and Equitable</u>

28.  Finally, RBC argues the Debtor's Plan is patently unconfimable because it does not meet the cram down requirements of Section 1129(b).  Simply put, RBC's argument misses the mark.

29.  First, RBC argues the Plan is not fair and equitable because it fails to satisfy the "new value" exception to the absolute priority rule.  While this issue will be substantially addressed at confirmation, the Equity Contribution set forth in the Plan constitutes "new value."  Specifically, the Equity Contribution is subject to overbids, thus exposing the sale of equity to the market in order to satisfy the true value of the Debtor's assets.

30.  Moreover, the new value proposed under the Plan is much more than just the conversion of secured debt to equity, as the Equity Contribution will satisfy the secured claim in Class 1 for $75,000, priority claims of approximately $19,000, and administrative claims of approximately $50,000,[2] for a total of at nearly $147,000.  If any creditors or other interested parties believe the Debtor's equity is worth more than this amount, they are welcome to submit a bid.

---

2   While the Debtor's Plan estimates administrative claims of approximately $75,000, SLF's retainer, as of the Petition Date, was $22,441.92, which, after Court approval, will be applied to allowed administrative claims.  Therefore, it is estimated that the remaining administrative claims to be satisfied through the Plan will total just over $52,000.

9

31. RBC also states that the Plan unfairly discriminates because it doesn't classify similar claims or interests in the same class. Specifically, RBC argues that the secured claim of Joe Harris is unsecured, and thus, should be classified with general unsecured creditors.

32. Simply put, however, the Debtor's Plan only has 4 classes of claims, and properly classifies the Debtor's two secured creditors in Classes 1 and 2, unsecured creditors in Class 3, and equity in Class 4. Such classification scheme is simply, straightforward and appropriate. Accordingly, the Debtor's Plan is fair and equitable.

WHEREFORE, the Debtor respectfully requests that the Court: (i) approve the Disclosure Statement, as amended; (ii) overrule the Objections; and (ii) grant such other relief as this Court deems just and appropriate.

Dated this 19th day of September, 2014.

Respectfully Submitted,

/s/Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent on September 19, 2014, via the Electronic Court's CM/ECF system to the following:

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11
edward.m.mcdonald@usdoj.gov

AMANDA M. PERACH on behalf of Creditor RBC Distribution, LLC
aperach@mcdonaldcarano.com, mcarter@mcdonaldcarano.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

RYAN J. WORKS on behalf of Creditor RBC Distribution, LLC
rworks@mcdonaldcarano.com, kbarrett@mcdonaldcarano.com;bgrubb@mcdonaldcarano.com

                                                                                  /s/ Janine Lee
                                                                                     Janine Lee